IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Crim. No. 97-76 (SCC) |
| **EDUARDO ALICEA TORRES** | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Eduardo Alicea-Torres' *pro se* motion to reduce his sentence under section 404 of the First Step Act ("FSA"). Docket No. 2111. The United States filed an opposition at Docket No. 2209. Defendant, through the Federal Public Defender, filed a motion in support of sentence reduction at Docket No. 2220. The matter has been referred to me for Report and Recommendation. See Docket No. 2291. For the reasons set forth below, I recommend that Defendant's motion be **GRANTED**.

**I.      Factual and Procedural Background**

On June 25, 1999, Defendant was found guilty of Count Two of the Superseding Indictment. Docket No. 852. Count Two charged a conspiracy to distribute multi-kilogram quantities of controlled substances; more than five (5) kilograms of heroin, five (5) kilograms of cocaine base, five (5) kilograms of cocaine, and one hundred (100) kilograms of marihuana, under 21 U.S.C. §§ 841 and 846. A sentencing hearing was held on January 20, 2000. Docket No. 1126. The Court calculated Defendant's offense level under the sentencing guidelines as follows: a base offense level of 38 was determined under U.S.S.G § 2D1.1, which provides that "[i]f a victim was killed under circumstances that constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." See U.S.S.G § 2D1.1(d)(1). Pursuant to U.S.S.G. § 2A1.1 and the murder cross-reference, Defendant's offense level calculation was increased to 43. When combined with a Criminal History Category of II, the based offense level calculation of 43 yielded an advisory

**United States of America v. Alicea-Torres**
**Criminal No. 97-76 (SCC)**
**Report and Recommendation**

range of life imprisonment. The Court sentenced Defendant to life imprisonment, and judgment was entered on February 1, 2000. Docket No. 1134.

Subsequently, the Court *sua sponte* reassessed Petitioner's sentence because it concluded that the murder cross-reference under U.S.S.G. § 2A1.1 did not apply. The Court vacated the original sentence and held a resentencing hearing on February 28, 2000. See Docket No. 1384. At resentencing, the Court concluded that the drug quantities attributable to Defendant (150 kilograms of cocaine and/or 1.5 kilograms of crack cocaine) yielded a base offense level of 38. Id. at p. 22. The Court added a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), for possession of firearms during the conspiracy, for an adjusted total offense level of 40 that, with a Criminal History Category of II, had a guideline range of 324 to 405 months of imprisonment. Id. at p. 23. The United States moved for an upward departure based on the violence attendant to the conspiracy. The Court found that an upward departure of one level, for a total offense level of 41, was warranted pursuant to U.S.S.G. § 5K2.1, because the conspiracy, with Defendant's direct participation, resulted in the deaths of an informant and an undercover police officer, as well as ten (10) additional deaths that were foreseeable to Defendant and occurred in furtherance of the conspiracy. Docket No. 1384 at pp. 23-24. The guideline range for a total offense level of 41 was 360 months to life imprisonment. Id. at p. 24. Defendant was sentenced to life imprisonment with five (5) years of supervised release. Id.

On March 17, 2000, Defendant appealed his conviction and sentence to the First Circuit Court of Appeals. The First Circuit affirmed on November 20, 2003. United States v. Soto-Beníquez, 356 F.3d 1 (1st Cir. 2003). On May 24, 2005, Defendant file a petition under 28 U.S.C. § 2255 to vacate, set aside or correct sentence. Docket No. 1615. The Court denied his petition on September 29, 2006. See Alicea-Torres v. United States, 455 F. Supp. 2d 32 (D.P.R. 2006). Defendant subsequently filed multiple motions seeking sentence reductions pursuant to 18 U.S.C. § 3582(c)(2), based on retroactive amendments to the Sentencing Guidelines, all of which were denied.[1]

On June 22, 2021, Defendant filed his first motion to reduce sentence under Section 404 of the FSA pursuant to 18 U.S.C. § 3582(c)(1)(B). Docket No. 2111. On December 9, 2023, the

---

[1]    See Defendant's motions at Docket Nos. 1745, 1877, 1945, 1974 and 2062, and the Court's respective rulings on Docket Nos. 1787, 1932, 2039, 2041 and 2087.

United States of America v. Alicea-Torres
Criminal No. 97-76 (SCC)
Report and Recommendation

Government filed its opposition at Docket No. 2209. On December 18, 2023, Defendant, now represented by a Federal Public Defender, filed his reply at Docket No. 2220. The United States Probation Office (USPO) stated its position as to Defendant's motion at Docket No. 2301.

## II.    Legal Standard

Congress enacted the Fair Sentencing Act of 2010 to raise the threshold quantities of crack cocaine required to trigger harsher mandatory minimum sentences. See Fair Sentencing Act of 2010, Pub L. No. 111-220, § 2, 124 Stat. 2372, 2372. Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine necessary to trigger a ten-year mandatory minimum from 50 grams to 280 grams. United States v. Castillo-Torres, 2024 WL 1672281, at *2 (D.P.R. Apr. 18, 2024) (citations omitted); see also 21 U.S.C. § 841(b)(1)(A)(iii). However, the Fair Sentencing Act did not apply to defendants sentenced before August 3, 2010. Dorsey v. United States, 567 U.S. 260 (2012). To remedy this gap, Congress enacted the FSA in 2018. See First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). Section 404 of the FSA authorizes courts to reduce crack cocaine sentences "as if sections 2 and 3 of the Fair Sentencing Act of 2010 […] were in effect at the time the covered offense was committed." FSA of 2018 § 404(b). "A crack cocaine offense that triggers a mandatory minimum penalty is a 'covered offense' eligible for a sentence reduction under the First Step Act." Castillo-Torres, 2024 WL 1672281, at *2 (citing Terry v. United States, 593 U.S. 486, 495 (2021)).

A defendant is eligible for a sentence reduction under the FSA if: (1) he was convicted of a federal offense with penalties that were modified by Sections 2 or 3 of the Fair Sentencing Act, and the offense was committed before August 3, 2010; and (2) his sentence was not imposed or reduced under those provisions. FSA of 2018, § 404. However, even if a defendant is eligible for sentence reduction, the court is not required to reduce the sentence. Id. § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). In deciding whether to reduce a sentence under the FSA, courts may consider the factors set forth in 18 U.S.C. § 3553(a). Concepción v. United States, 597 U.S. 481, 495 (2022).

## III.    Discussion

### a.    Eligibility

As a threshold matter, the Court must determine whether Defendant is eligible for a sentence reduction under Section 404 of the FSA. Eligibility requires that the offense of conviction

3

**United States of America v. Alicea-Torres**
**Criminal No. 97-76 (SCC)**
**Report and Recommendation**

be a "covered offense"—that is, a crack cocaine offense committed before August 3, 2010, with penalties that were modified by sections 2 or 3 of the Fair Sentencing Act. FSA § 404(a); Castillo-Torres, 2024 WL 1672281, at *2 (citing Terry, 593 U.S. at 495).

Defendant was convicted of an offense involving crack cocaine that predates the August 3, 2010, cutoff, and his conviction triggered the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(iii). The Government does not dispute eligibility. Accordingly, I conclude that Defendant's crack cocaine offense constitutes a "covered offense" and that Defendant is eligible for a sentence reduction under the FSA. Concepción, 597 U.S. at 498 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range 'anchor[s]' the sentencing proceeding.") (internal quotations omitted).

**b.      Calculation of Sentencing Guidelines**

Having established eligibility, I calculate Defendant's applicable guidelines range had he been sentenced today under the Fair Sentencing Act's amended drug quantity thresholds. The U.S. Supreme Court has clarified that district courts have "complete discretion to consider any intervening changes of fact or law between the original sentencing and the present application, apart from constraints established by Congress or the Constitution." United States v. Rodríguez-Rodríguez, 686 F. Supp. 3d 58, 61 (D.P.R. 2023) (citing Concepción, 597 U.S. at 494).

At resentencing, the Court attributed to Defendant 1.5 kilograms of crack cocaine, yielding a base offense level of 38 under the then-applicable guidelines. Docket No. 1384 at p. 22. The offense level was increased by two levels pursuant to U.S.S.G. § 2D1.1(b)(1), based on Defendant's possession of a firearm during the drug trafficking conspiracy, resulting in an adjusted offense level of 40. Combined with a Criminal History Category of II, the advisory guidelines range was 324 to 405 months of imprisonment. Id. at p. 23. However, the Court applied a one-level upward departure under U.S.S.G. § 5K2.1, based on the homicides attributable to the conspiracy, yielding a total offense level of 41 and a new guideline range of 360 months to life imprisonment. Id. at pp. 23-24. Under the amended guidelines, Defendant's base offense level today for the same drug quantities would be 36 (150 kilograms of cocaine and/or 1.5 kilograms of crack cocaine). See U.S.S.G. § 2D1.1(c)(2). Adding the two-level firearm enhancement would yield an adjusted offense level of 38. Id. at § 2D1.1(b)(1). Defendant's Criminal History Category

4

**United States of America v. Alicea-Torres**
**Criminal No. 97-76 (SCC)**
**Report and Recommendation**

of II remains. Absent any upward departure, the applicable guideline range would now be 262 to 327 months of imprisonment.[2]

The United States argues that the Court should apply the first-degree murder cross-reference under U.S.S.G. § 2A1.1, which would result in a base offense level of 43 and a guidelines range of life imprisonment. See U.S.S.G. § 2A1.1. I disagree. Although the murder cross-reference was applied at Defendant's original sentencing, that sentence was subsequently vacated, and the murder cross-reference was not applied at resentencing. The reason was that the murders occurred in March 1993, before the November 1993 amendment adopting the applicable guidelines. Docket No. 1153. Applying the murder cross-reference retroactively would have violated the Ex Post Facto Clause. Id. I decline to apply in these proceedings a guidelines enhancement that could not have been applied and was expressly rejected at Defendant's resentencing. Docket No. 1384 at p. 2.; also see Crim. No. 4-cr-97-76, Docket No. 2275 at p. 19.

**c.      Sentencing Factors in Section 3553(a)**

The factors in 18 U.S.C. § 3553(a) include a broad range of considerations, namely, the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable Sentencing Guidelines range, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. See 18 U.S.C. § 3553(a). Considered as a whole, these factors support a reduction in Defendant's sentence.

I am cognizant of the gravity of Defendant's offense and do not intend to minimize his past criminal conduct in any way. The conspiracy for which he was convicted involved the large-scale distribution of narcotics, and Defendant participated in violent acts, including multiple homicides resulting in the deaths of an informant, an undercover agent, and others. There is no question that Defendant incurred in extraordinarily serious criminal conduct which warranted significant punishment. Those facts were accorded significant weight at the original sentencing, and they should also be afforded substantial weight now. However, the Section 3553(a) analysis does not end with the nature of the offense. The Court must also consider Defendant's post-sentencing

---

[2]      The USPO independently calculated the same guidelines range under the current Sentencing Guidelines. See Docket No. 2301.

**United States of America v. Alicea-Torres**
**Criminal No. 97-76 (SCC)**
**Report and Recommendation**

history and characteristics in determining whether a reduced sentence remains sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Defendant has served almost 29 years of imprisonment. The record reflects that Defendant has demonstrated a sustained and meaningful commitment to rehabilitation over the course of his lengthy term of imprisonment. He earned his GED and completed more than 450 hours of educational, vocational, and rehabilitative programming, including literacy courses, vocational training, and other educational offerings. Docket No. 2220-1 at pp. 4-5; Docket No. 2301. He also maintained institutional employment in a variety of positions, including as cook, orderly, UNICOR worker, detention center assistant, and admission and orientation orderly. Id. Viewed collectively, Defendant's trajectory during imprisonment reflects more than isolated examples of good institutional conduct. This demonstrates a sustained departure from the conduct that characterized Defendant's earlier criminal history.

Defendant's disciplinary record submitted as of June 2021 supports this conclusion. His institutional infractions are both limited and remote in time. Docket No. 2111-2 at p. 3. While the record reflects disciplinary violations for possession of a dangerous weapon, possession of a hazardous tool, and refusing to obey an order, these occurred more than a decade ago in the year 2013. And the two administrative infractions in 1999 are also remote as these occurred over twenty-five (25) years ago.[3] Overall, Defendant's disciplinary history is comparatively modest and more favorable than records other courts have concluded did not preclude sentence reductions. See United States v. Simons, 375 F. Supp. 3d 379, 388 (E.D.N.Y. 2019) (describing eight disciplinary infractions over eleven years as a relatively "benign" behavior while in custody).

Defendant's family support and age weigh in favor of a reduction. Defendant appears to have a strong network of family support, as reflected in the numerous letters submitted on his behalf, and he has presented a concrete release plan. Upon release, he intends to reside with his sister in the United States, assist in caring for their mother, and obtain employment in his brother's landscaping business. Docket No. 2111 at p. 6. And because he is fifty-five (55) years old, he falls

---

[3]    The Court notes that the USPO's most recent submission mentions that Defendant received a disciplinary sanction on December 10, 2025. See Docket No. 2301. However, the USPO did not provide any detail regarding the nature or circumstances of the infraction, which suggests that the infraction was not considered sufficiently significant to warrant discussion. Indeed, the USPO concluded that there were sufficient grounds for the Court to consider Defendant's motion, notwithstanding the reference to the 2025 sanction. Id. at p. 3 ("[H]e has received only six sanctions over more than 28 years in federal custody, the last one being on December 10, 2025.").

within an age group for which recidivism rates decline substantially. See U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, 22-25 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited on August 5, 2026). Consistent with that research, the BOP currently classifies Defendant as presenting a minimal risk of recidivism under its own risk-assessment metrics. Docket No. 2220-1 at p. 2.

The need to avoid unwarranted sentencing disparities likewise weighs in favor of the relief sought by Defendant. "A credible claim of sentencing disparity requires that the proponent furnish the court with enough relevant information to permit a determination that he and his proposed comparators are similarly situated." United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017) (citing United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015)). A petitioner must provide information concerning his comparator's specific criminal involvement, criminal history, and cooperation to "enable the court to compare apples to apples." Id.

Defendant Carmelo Vega-Pacheco, like Defendant, was indicted as a triggerman in the conspiracy and was convicted for the same underlying criminal conduct; the possession with intent to distribute more than 1.5 kilograms of crack cocaine and related acts of violence. Docket No. 1767-1 at p. 24; also see Crim. No. 5-cr-97-76, Docket No. 1376 at pp. 28-30. Like Defendant, Vega-Pacheco received a base offense level of 38 premised on the drug quantity attributable to him and a two-level firearm enhancement. Id. at p. 29. Unlike Defendant, however, Vega-Pacheco had a Criminal History Category IV, which was higher than Defendant's Category II. Id. His resulting total offense level of 40 yielded a guidelines range of 360 months to life imprisonment, and the Court imposed a life sentence. In doing so, the Court expressly relied on Vega-Pacheco's extensive history of violence, explaining that "five people were murdered" and that "several other murders occurred during this criminal conspiracy as part of the conspiracy," demonstrating his propensity for violence and murder. Id. at pp. 29-30. Those murders also resulted in multiple state convictions, and Vega-Pacheco was serving multiple state sentences for those offenses at the time of his federal sentencing. See Crim. No. 5-cr-97-76, Docket No. 1761-1 at pp. 11-12. Following Amendment 750 of the United States Sentencing Commission Guidelines Manual, codified under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(c), Vega-Pacheco's total offense level was reduced to 38, resulting in a revised guidelines range of 324 to 405 months of imprisonment. See Crim.

No. 5-cr-97-76, Docket Nos. 1869. 1871. The Government and Vega-Pacheco thereafter stipulated to a sentence reduction of 405 months of imprisonment, which the Court adopted. See Crim. No. 5-cr-97-76, Docket Nos. 1776, 1869.

Defendant Ramón L. Fernández-Malavé, like Defendant, was indicted as a triggerman in the same conspiracy and was held accountable for the same underlying criminal conduct. Docket No. 1767-1 at p. 24; also see Crim. No. 4-cr-97-76, Docket No. 1490 at pp. 45-48. He was convicted of conspiracy to possess with intent to distribute the same drug quantities, received a base offense level of 38 together with a two-level firearm enhancement, and was placed in Criminal History Category III, which was higher than Defendant's Category II. See Crim. No. 4-cr-97-76, Docket No. 1428. His resulting guidelines range was 360 months to life imprisonment, and the Court imposed a life sentence. In doing so, the Court relied on evidence that Fernández-Malavé had participated in a murder in furtherance of the conspiracy, finding "credible evidence on the record that defendant participated in the committing of a murder in furtherance of the conspiracy," and emphasizing that this finding was "independent […] from the defendant's acceptance that he committed second degree murder in this case, for which the presentence report and the Court have found that it is in furtherance of the conspiracy." See Crim. No. 4-cr-97-76, Docket No. 1490 at p. 46. Fernández-Malavé was serving a state sentence for that second-degree murder at the time of his federal sentencing. See Crim. No. 4-cr-97-76, Docket No. 928 at p. 12. Fernández-Malavé filed a motion for a sentence reduction under the FSA. See Crim. No. 4-cr-97-76, Docket No. 2251. He argued that his revised base offense level was 34 based on the applicable crack cocaine quantity and that, after application of the two-level firearm enhancement, his guidelines range was 235 to 293 months of imprisonment. Id. The Court granted the motion and reduced his sentence to time served. See Crim. No. 4-cr-97-76, Docket Nos. 2271, 2275 at pp. 18-19. Although Fernández-Malavé's request was premised on his youth at the time of the offense, the resentencing court rejected the Government's contention that it could rely on a murder cross-reference that could not apply at the original sentencing. See Crim. No. 4-cr-97-76, Docket No. 2275 at p. 19.

The disparity that would result by maintaining Defendant's life sentence is significant. At the resentencing, the Court made an upward departure under former U.S.S.G. § 5K2.1, because Defendant's Criminal History Category II otherwise placed him below the 360-month-to-life guidelines range, which the Court deemed appropriate to account for the homicides. It did not have

**United States of America v. Alicea-Torres**
**Criminal No. 97-76 (SCC)**
**Report and Recommendation**

to do the same in the case of Fernández-Malavé and Vega-Pacheco, whose Criminal History Categories were III and IV, respectively, because they both fell within that 360-month-to-life guidelines range without any upward departure. The sentencing record likewise demonstrates that the Court imposed life sentences on all three defendants based principally on their involvement in multiple homicides. Yet, following retroactive relief under the FSA and intervening amendments to the Sentencing Guidelines, Fernández-Malavé and Vega-Pacheco were granted reductions to determinate sentences of time served and 405 months imprisonment, respectively. Maintaining Defendant's life sentence under these circumstances would create a harsh sentencing disparity. Like Fernández-Malavé and Vega-Pacheco, Defendant was held accountable for the same offenses, the same drug quantities, and multiple homicides. Unlike Fernández-Malavé and Vega-Pacheco, who were both serving time in state court at the time of original sentencing, Defendant was not charged for the homicides. Indeed, despite having the lowest criminal history category of the three, Defendant remains the only defendant serving a life sentence. Compare United States v. Ramos-Romero, 2025 WL 599373, at *4 (D.P.R. Feb. 25, 2025), report and recommendation adopted, Docket No. 1735 (May 6, 2025) (finding no unwarranted disparity where the co-defendant who received the shorter sentence also had a substantially lower offense level and criminal history category). Moreover, if Defendant were sentenced today, he would not be subject to an upward departure under former U.S.S.G § 5K2.1, because that departure provision is no longer available under the current guidelines. See Concepción, 597 U.S. at 500 (the Court may consider intervening changes in law, including amendments to the Sentencing Guidelines, in determining whether and to what extent a sentence reduction is appropriate).

To be sure, the FSA is not intended as a vehicle to achieve plenary resentencing, and I remain mindful of the Court's determination that Defendant's sentence should fully account for his participation in the homicides. But intervening legal developments and Defendant's post-sentencing conduct are relevant to the inquiry and may be considered in exercising discretion over this matter. Having done so, I conclude that a reduced sentence is warranted. Defendant has already served approximately 28.6 years of imprisonment (approximately 343 months), which exceeds the higher end of the guidelines range of 262 to 327 months of imprisonment that would apply to a total offense level of 38. Given the circumstances described above and the time already served by Defendant, a reduced sentence of time served continues to reflect the gravity of Defendant's

9

United States of America v. Alicea-Torres
Criminal No. 97-76 (SCC)
Report and Recommendation

conduct, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and avoid unwarranted sentencing disparities with similarly situated co-defendants. Further, such a reduced sentence would remain faithful to the sentencing court's objectives while accounting for the substantial legal and factual developments that have occurred since Defendant's sentencing.

### IV.    Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** Defendant Alicea-Torres' motion for reduced sentence.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994).

In San Juan, Puerto Rico, this 5th day of August 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

10